Mr. Justice FIELD,
 

 after stating the facts of the case, delivered the opinion of the court, as follows:
 

 The stipulation of the charter-party to take a cargo of lawful merchandise necessarily implied that the articles composing the cargo should be in such condition, and be put.up in such form, that they could- be stowed and carried without one part damaging the other. Whether in any case articles offered can be taken with safety to other articles, will depend upon a variety of considerations; the nature of the articles, the state of the weather, the voyage contemplated, the amount of cargo already received, and other particulars. Lard, for example, can be carried in winter to a northern port in "loose casks with little damage to other articles, whilst injury may be reasonably apprehended if the
 
 *319
 
 voyage is to be made through the tropics, and the casks are not perfectly tight. .Very different care must necessarily be given by the master in receiving and stowing goods perishable in their nature from heat or moisture, and such as are unaffected by either. All that is required of him in such ease — he being a competent officer — in determining whether particular goods are at the time in shipping order aud condition, or can be received in the state and stowage of cargo already aboard, is that he shall not act capriciously or without due consideration, but shall exercise an honest and reasonable judgment in the matter.
 

 In
 
 Weston
 
 v.
 
 Foster,
 

 *
 
 the whole of the vessel, except the cabin and room for the crew, sails, cables, and provisions, was let, and the owners covenanted to receive all such lawful merchandise as the charterers should choose to put on board. The master, who was a competent officer, took on board all the cargo he thought his vessel could safely carry, which, however, did not fill it, but left a space capable of holding fifty tons more, and the charterers insisted that there should be deducted from the freight-money the amount they would have received if fifty tons more had been brought. But the court held that the whole charter-money was earned, and that the honest opinion of the master, though not absolutely binding on the charterers, could only be controlled by decisive evidence of a mistake on his part.
 

 The master was here sustained in refusing to take all the cargo the hold of the vessel could receive, because, in the exercise of his honest judgment, he thought it would endanger her safety, notwithstanding the terms of the charter-party. Upon the same principle he may refuse to take goods offered, if in his honest judgment they are in such a condition or of such character that they cannot be canned without, injury to the rest of the cargo.
 

 In
 
 Weston
 
 v. Minot,
 
 †
 
 where a vessel was chartered for a voyage to Calcutta and back, to carry all lawful goods placed on board, and for a gross sum for freight out and back, to
 
 *320
 
 the entire capacity of the vessel, it was held that the charter-party must be considered to mean all goods not contraband nor diseased, and as many of them as could be put on board without making the vessel draw too much for safety, and that, if the goods put on board were heavy articles, and, before the ship was full, sunk her as low as. is usual and proper without extra danger, the master might refuse to take more without violating the charter-party.
 

 The principle upon which the action of the master was justified in these cases applies to the case at bar. Safety to the cai’go received on board, though not so high a considei’ation as safety to the ship, is one which should constantly govern the action of the master.
 

 That his apprehensions were well founded in this ease is established by the result. His conduct, therefore, in insisting upon protection to his ship, was reasonable, and this was in effect conceded by the charterers, as otherwise they would have insisted upon the ship receiving the lard, or that the matter should have been submitted to the inspector under whose inspection it was stipulated the ship was to be loaded.
 

 The agreement contained in the letter must be considered as a modification of the terms of the charter-party in respect to the lard in question. It relieved the ship from the responsibility of safe carriage of the cargo so far as that was affected by the lard. It may be regarded as a stipulation to that effect embodied in the charter-party; a stipulation which, though of no efficacy as between shipper and vessel, was valid as between charterer and owner.
 

 If the charterers had owned the entire cargo, and had induced the master, against his objection, to receive and carry the lard in its leaking condition, they would not have had any right of action against the ship for the damage sustained, nor could they have recouped or set-off the amount of damage in an action against them for the charter-money. The principle upon which the ship would be exempt from, liability in such case is applicable to the present ease between the charterers and owners.
 

 Decree affirmed.
 

 *
 

 2 Curtis, 119.
 

 †
 

 3 Woodbury & Minot, 436.